IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TRAVIS BURKE,<br>　　　Plaintiff,<br><br>v.<br><br>RENEA SALTSGAVER, *et al.*,<br>　　　Defendants. | Case No. 2:25-cv-02266-JEH |

**Order**

　　　Plaintiff filed a Second Amended Complaint under 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was detained at the Champaign County Jail ("Jail"). (Doc. 10). Now before the Court is Plaintiff's renewed Petition to Proceed *in forma pauperis* ("IFP Petition"). (Doc. 11). For the reasons stated below, Plaintiff's IFP Petition is DENIED, and this case is dismissed with prejudice.

I

　　　Plaintiff filed a Complaint under § 1983 on October 6, 2025. (Doc. 1). On October 21, 2025, the Court entered a Merit Review Order and dismissed his Complaint without prejudice as a violation of Federal Rules of Civil Procedure 18 and 20. (Doc. 6). The Court gave Plaintiff leave to file an Amended Complaint and a renewed IFP Petition. The Court warned Plaintiff that if he failed to file a timely Amended Complaint, or if the Amended Complaint failed to state a claim, this case would be dismissed with prejudice and Plaintiff would be responsible for the $405 filing fee. *Id.*

On October 29, 2025, Plaintiff filed an Amended Complaint, but did not sign it. As a result, the Court denied Plaintiff's Motion for Leave to File Amended Complaint and directed him to file a signed Amended Complaint.

On November 6, 2025, Plaintiff filed a Motion for Leave to File Second Amended Complaint. The Court granted his Motion and filed the Second Amended Complaint. (Doc. 10). On November 12, 2025, Plaintiff filed a renewed IFP Petition. (Doc. 11).

## II

As Plaintiff was not in custody when he filed his Complaint, the Prison Litigation Reform Act, 42 U.S.C. § 1997e, does not apply and Plaintiff's IFP Petition must be reviewed under 28 U.S.C. §1915(a)(1), which is designed to ensure indigent litigants have meaningful access to the federal courts. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The Court must deny an IFP Petition if: (1) the allegation of poverty is untrue; (2) the action is frivolous; (3) the action fails to state a claim; or (4) the action seeks monetary relief against an immune defendant. § 1915(e)(2); *see Hutchinson v Spink*, 126 F.3d 895, 899 (7th Cir. 1997) (recognizing the applicability of § 1915 to cases brought by non-prisoners).

In his IFP Petition, Plaintiff states he was released from custody on October 2, 2025, and is currently unemployed. When asked to disclose his "[a]verage monthly income amount during the past 12 months," Plaintiff states he received $2,277.52 in gifts, but he does not expect to receive this income next month. (Doc. 11 at p. 1). Plaintiff receives $298.00 in SNAP benefits each month. Plaintiff has no assets, cash, or money in a bank account. Plaintiff pays $800 for rent, $40 for a bus card, and $45 for his phone each month. Plaintiff does not have any debts or other financial obligations. Based on his lack of income and his monthly expenses, the Court finds Plaintiff's allegations of poverty are true. The inquiry does not end there, however, as the Court must review the Second Amended Complaint to

determine whether the action is frivolous, fails to state a claim, or seeks monetary relief against a defendant immune from suit.

### III

In reviewing the Second Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

In his Second Amended Complaint, Plaintiff names Nurse Practitioners Aline Nelson and Sara Stover, Nurses Renea Saltsgaver and Olga Vishinakov, Lieutenants Josh Sapp and R. Synder, and Correctional Officers Borden, McMahon, and Johnson as Defendants.

Plaintiff alleges he was severely injured in a motor vehicle accident on May 12, 2023, and hospitalized at Carle Foundation Hospital ("Carle"). On November 8, 2023, Plaintiff was arrested for an Aggravated DUI & Aggravated Battery; however, he was hospitalized at Carle for a blood clot in his lungs. On November 10, 2023, Plaintiff was released from Carle and taken to the Jail.

Prior to his arrest, Plaintiff was prescribed Gabapentin, Robaxin, and Lidocaine. Defendant Nurse Practitioner Nelson allegedly discontinued Robaxin and Lidocaine, decreased the dosage of Gabapentin, and prescribed Tylenol.

On November 23, 2023, Plaintiff received a medical mattress permit to alleviate pain in his shoulder, back, pelvis, and neck.

On December 6, 2023, Plaintiff saw Defendant Nurse Saltsgaver while she was doing rounds and asked to speak to her regarding a misprint on the mattress permit. Defendant Saltsgaver allegedly said, "[I]t says bottom bunk, but it is on the top bunk." (Doc. 10 at p. 3). Plaintiff alleges Defendant Saltsgaver walked away as he tried to explain his mattress was on the top bunk because he was cleaning. Then, Defendant Correctional Officer Borden allegedly came to Plaintiff's cell to remove the medical mattress. When Plaintiff refused, Defendant Borden placed Plaintiff in segregation for five days. Without a medical mattress, Plaintiff alleges the pain immediately returned and it was difficult to sleep.

On December 21, 2023, Plaintiff was transported to an appointment with a Pain Management Specialist ("PMS") at Carle. The PMS ordered physical therapy and prescribed Gabapentin, APAP, and Duloxetine. Defendant Nelson allegedly disregarded the PMS's recommendations regarding the pain medications and continued Plaintiff's prescription for Gabapentin and Tylenol.

On December 22, 2023, Plaintiff was transported to Carle for physical therapy. The physical therapist recommended follow up appointments every two weeks, but Plaintiff was not transported to his next appointment until January 30, 2024. Plaintiff submitted grievances regarding his need for physical therapy. Defendant Lieutenant Synder responded: "It was stated by your PT that you no longer needed PT." *Id.* at p. 6. Plaintiff alleges this was false and that Defendant Synder was deliberately indifferent to his serious medical needs.

On January 2, 2024, Plaintiff saw Defendant Nelson. She ordered a follow up in two weeks, but Plaintiff did not see Defendant Nelson again until January 25, 2024.

On January 24, 2024, Plaintiff alleges he was unable to hear his cellmate and submitted a sick call request.

On January 25, 2024, Defendant Nelson agreed to give Plaintiff another permit for a medical mattress, but Defendant Saltsgaver interjected and told Defendant Nelson not to. Plaintiff alleges he told Defendant Nelson he was in pain and asked for Gabapentin three times a day, but she denied his request. Plaintiff also informed Defendant Nelson about his hearing issue, and Defendant Nelson advised Plaintiff to see a hearing specialist after he was released.

On March 17, 2024, Plaintiff notified Defendant Correctional Officer Johnson he needed his inhaler refilled. On March 23, 2024, Plaintiff was short of breath and notified Defendant Johnson, but she allegedly ignored him. Plaintiff submitted a grievance. In response to his grievance, Defendant Lieutenant Sapp stated: "Nothing validates claim, and he would be remiss to say respect goes both ways." *Id.* at p. 8.

On March 26, 2024, Plaintiff saw Defendant Nelson about a new pain in his left thigh. Defendant Nelson told Plaintiff she would order labs, but Defendant Saltsgaver allegedly told her not to. Plaintiff informed Defendants Nelson and Saltsgaver he was in pain, but Defendant Correctional Officer McMahon interrupted and told Plaintiff to leave.

On April 3, 2024, Defendant Saltsgaver allegedly told Plaintiff to stop writing grievances and retaliated against him by placing him on dayroom restriction. Plaintiff was given a disciplinary report and placed in segregation for five days.

On April 9, 2024, Plaintiff asked Defendant Nelson to refer him to a hearing specialist because he had ringing in his ears and difficulty hearing. On April 16, 2024, Plaintiff asked Defendant Nurse Practitioner Stover to refer him to a hearing specialist. Defendants Nelson and Stover denied his requests and advised him to address his hearing issues after he was released, pursuant to Jail policy.

On April 26, 2024, Plaintiff alleges he asked Defendants Correctional Officers Borden and Johnson for his inhaler multiple times to no avail. During medline on April 27 or 28, 2024, Defendant Nurse Vishniakov stated Plaintiff's inhaler needed to be renewed and did not allow Plaintiff to use his inhaler.

Plaintiff was transferred to Jacksonville Correctional Center. On November 26, 2024, Plaintiff saw an audiologist and was diagnosed with "Mod-Sev hearing loss in both ears." *Id.* at p. 8. Plaintiff received hearing aids on February 13, 2025.

### IV

Once again, Plaintiff's Second Amended Complaint includes multiple unrelated claims against different Defendants. Plaintiff's claims are not properly joined in one lawsuit. For instance, a deliberate indifference claim against Defendants Nelson, Saltsgaver, and Borden based on the denial of a medical mattress is not properly joined with a claim against Defendants Borden, Johnson, Sapp, and Vishniakov regarding the denial of his inhaler. Similarly, a claim against Defendants Nelson and Stover regarding their refusal to refer him to audiologist due to hearing loss is not properly joined with a claim against Defendant Synder, Nelson, and Saltsgaver regarding the denial of recommended physical therapy.

Unrelated claims against the same Defendant may be joined in one action, but different Defendants can be joined in one action only if the claims against them arise from the same series of transactions or occurrences. Fed. R. Civ. P. 18, 20; *Kadamovas v. Stevens*, 706 F.3d 843, 846 (7th Cir. 2013) (court "can require the plaintiff 'to file separate complaints, each confined to one group of injuries and defendants.'") (quoted cite omitted); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot. Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions."); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Thus

6

multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits…."). Therefore, Plaintiff's Second Amended Complaint is DISMISSED WITH PREJUDICE as a violation of Federal Rules of Civil Procedure 18 and 20. Any further amendment would be futile because Plaintiff has had multiple opportunities to state an actionable claim and failed to do so. Plaintiff's IFP Petition is DENIED.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Second Amended Complaint is DISMISSED WITH PREJUDICE as a violation of Federal Rules of Civil Procedure 18 and 20. Any further amendment would be futile. This case is therefore closed. The Clerk is directed to enter judgment.**

2) **Plaintiff's Petition to Proceed in forma pauperis [11] is DENIED. Plaintiff must pay the full filing fee of $405 even though his case has been dismissed.**

3) **If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal** *in forma pauperis* **MUST identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith.** *See* **Fed. R. App. P. 24(a)(1)(c);** *see also Celske v. Edwards*, **164 F.3d 396, 398 (7th Cir. 1999) (stating that an appellant should be allowed to submit a statement of the grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.**

*It is so ordered.*

Entered: November 13, 2025

s/Jonathan E. Hawley
U.S. District Judge